**SO ORDERED.**

**SIGNED this 25 day of August, 2025.**



_____
**Joseph N. Callaway
United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## GREENVILLE DIVISION

| | |
|---|---|
| IN RE: | Case No. 19-00730-5-JNC |
| CAH ACQUISITION COMPANY #1, LLC, d/b/a WASHINGTON COUNTY HOSPITAL | Chapter 11 |
|     Debtor | |
| THOMAS W. WALDREP, JR., As Litigation Trustee, | |
|     Plaintiff, | |
| v. | Adversary Proceeding Case No. 24-00097-5-JNC |
| JONATHAN R. BRONISTE, | |
|     Defendant. | |

### ORDER ON MOTION TO DISMISS AMENDED COMPLAINT

The matter before the court is the Motion to Dismiss (Dkt. 31, the "Motion") filed by the defendant in this action. The original complaint in this matter was filed on July 25, 2024. Defendant filed an original motion to dismiss and supporting memorandum on December 11, 2024. At an initial hearing held January 30, 2025, plaintiff Trustee Thomas W. Waldrep, Jr. ("Trustee") moved for and was granted leave to amend the complaint. An amended complaint was timely filed

on April 14, 2025 (Dkt. 23, the "Amended Complaint"). Defendant Jonathan R. Broniste ("Defendant") filed the Motion and an accompanying memorandum of law, to which the Trustee responded (Dkt. 33).

In the Motion, Defendant renewed its motion to dismiss made as to the original complaint, arguing the Trustee has failed to state a claim upon which relief may be granted as a matter of law and that the court lacks jurisdiction in this matter.[1]

The Amended Complaint alleges claims against the Defendant for facilitating fraud, civil conspiracy, constructive fraudulent transfer, and actual fraudulent transfer. In the first seventeen paragraphs of the Amended Complaint, Trustee outlines an overarching fraudulent medical services payment scheme whereby doctors and other medical service providers such as laboratory service companies located across the country entered into contracts and arrangements with various critical access rural area hospitals (here, the Washington County Hospital located in Plymouth, North Carolina; "WCH"). Under the scheme (known as the "Verifi Scheme" as described and defined in the Amended Complaint), doctors and laboratory testing companies obtained patient samples located hundreds of miles away from WCH. None of those patients would have received any treatment at or from WCH, have any connection to it, or likely even have known of its existence. The parties would then bill those tests to private insurers as if they had been conducted at WCH. Doing so allowed the participating parties to charge private insurers much higher "in-network" reimbursement rates for procedures actually performed out-of-network hundreds of

---

[1] Defendant incorporates arguments from his prior motion to dismiss regarding jurisdiction. For the reasons stated on the record at the prior hearing and numerous other rulings in related adversary proceedings, the court finds it has full jurisdiction over this matter.

2

miles away. The actual charges of and reimbursement to the lab servicers should have calculated, if at all, at much lower rates. Am. Compl. ¶¶ 1 – 17.

The Trustee fills in details constituting and relating to the Verifi Scheme with specific factual allegations in paragraphs 18 to 44. He describes the process of unraveling and discovering the alleged fraud in paragraphs 45 to 71, including the resulting financial ruin and bankruptcies of the participating hospitals including WCH. The Trustee then relays key details and points discovered in the course of related litigation against another alleged participant (Feferman) relevant here in paragraphs 80 to 89. All of this is buttressed by a dozen exhibits (149 total pages) attached to and made a part of the Amended Complaint. Am. Compl. ¶¶ 18 – 71; 80 – 89.

Beginning with paragraph 90, the Amended Complaint describes Defendant's specific role and participation as a member/investor of Verifi holding two membership units (0.15% ownership) in exchange for a $1,250.00 capital contribution. He participated in the "Verifi Scheme" by submitting medical lab tests that were inherently fraudulent as described in paragraphs 1 - 89, a fact known to Defendant. Despite this knowledge, Defendant invested and participated in the Verifi Scheme anyway, thereby facilitating the fraud. Defendant did in fact receive Verifi Scheme profits in exchange for his participation. By the nature of his investment in Verifi and active participation in the Verifi Scheme laboratory tests, Defendant was an active participant and co-conspirator of Verifi and other parties (identified as McKinney, Guest, Gardner, Loudermilk, Nusbaum, White, RCHA, Perez and/or HAC in the Amended Complaint and its exhibits) in facilitating common law, insurance and medical services payment, and other fraud via the Verifi Scheme. Am. Compl. ¶¶ 90-101.

3

## LAW AND ANALYSIS

### I. Pleading Standards

Rule 8(a)(2) of the Federal Rules of Civil Procedure, made applicable here by Rule 7008 of the Federal Rules of Bankruptcy Procedure, provides that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). If a complaint fails to meet this threshold obligation, the action should be dismissed under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In *Bell Atlantic Corp. v. Twombly*, the United States Supreme Court held that a complaint filed in a federal forum must include "enough facts to state a claim to relief that is plausible on its face." 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007). As elaborated in *Ashcroft v. Iqbal*, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "only a complaint that states a plausible claim for relief survives a motion to dismiss." 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). Allegations in a federal complaint therefore must be more than a "formulaic recitation of the elements" of a claim. *Id.* at 681.

A claim has facial plausibility when a plaintiff pleads facts sufficient to allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that a defendant has acted improperly or unlawfully. *Id.* at 678. Dismissal under Rule 12(b)(6) is proper when, from the face of the pleading, it is clear that the claims are not supported by law, that one or more <u>facts</u> necessary to assert a valid claim have not been pled, or that facts exist that necessarily defeat a claim. "Determining whether a complaint states a plausible claim will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. 663-64.

In addition, even when the pleading in support of the claim passes the *Iqbal/Twombly* standard, if the gravamen of the case rests in fraud or mistake (as is the case here), Federal Rule of Civil Procedure 9(b)[2] mandates the pleading must "state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). However, this necessary element of intent or scienter, normally being a state of mind existing inside the defendant, is a difficult element to prove, and that portion of the pleadings may be pled in generality. *See In re Howard*, 12–02634–8–RDD, 2013 WL 3725155, at \*5 (Bankr. E.D.N.C. July 15, 2013). A defendant is highly unlikely to admit to intentional wrong-doing, and instead rests behind a mask of silence in the early stages of a case. Rule 9(b) acknowledges this tension, providing that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

## II. Facilitating Fraud and Civil Conspiracy

Trustee alleges claims for facilitating fraud and civil conspiracy in his first two claims for relief. North Carolina recognizes a cause of action for the facilitation of fraud. *Neugent v. Beroth Oil. Co.*, 149 N.C. App. 38, 52-53 (2002). The elements of facilitating fraud are: "(1) that the defendants agreed to defraud plaintiff; (2) that defendants committed an overt tortious act in furtherance of the agreement; and (3) that plaintiff suffered damages from that act." *Id.* at 53 (*citing Nye v. Oates*, 96 N.C.App. 343, 347, 385 S.E.2d 529, 531–32); *see also Coleman v. Shirlen*, 53 N.C.App. 573, 281 S.E.2d 431 (1981)). North Carolina does not recognize a distinct claim for civil conspiracy, but it does allow someone who is defrauded "to recover from anyone who facilitated the fraud by agreeing for it to be accomplished." *Neugent v. Beroth Oil. Co.*, 149 N.C. App. at

---

[2] Federal Rule of Civil Procedure 9 is made applicable in adversary proceedings by Federal Rule of Bankruptcy Procedure 7009.

53(*quoting Oates,* 96 N.C.App. at 346–47, 385 S.E.2d at 531 (1989)). In essence, a claim for civil conspiracy can be an element in and evidence of facilitating fraud and other forms of fraud.

As outlined above, the facts and elements of facilitating fraud are alleged with sufficient detail and particularity to survive the Motion. The Amended Complaint describes the Verifi Scheme, and in particular the Defendant's participation therein, with details. It alleges that Defendant purchased an interest in Verifi, submitted claims through, and received compensation from Verifi in an illegal and/or fraudulent manner and scheme to the detriment of Debtor. The Motion is denied as to facilitating fraud.

The court grants the Motion as to the civil conspiracy claim and dismisses the civil conspiracy claim as North Carolina does not recognize an independent claim for civil conspiracy. However, Plaintiff will be permitted to submit probative evidence of the civil conspiracy as an element or in support of other claims, subject to objections on other proper grounds.

### III. Constructive Fraudulent Transfers and Actual Fraudulent Transfers

Section 544(b)(1) of the Bankruptcy Code does not itself create a substantive cause of action, but rather allows a trustee to assume causes of action under applicable law. Applicable law as to constructive fraud includes N.C. Gen. Stat. § 39-23.5 and 11 U.S.C. 548 (a)(1)(B). Under North Carolina law, the Trustee may avoid any transfer made or obligation incurred by a debtor if: (1) the debtor made the transfer or incurred the obligations; (2) without receiving reasonably equivalent value in exchange for the transfer or obligations; and (3) the debtor was insolvent at the time or the debtor became insolvent as a result of the transfer or obligation." N.C. Gen. Stat. § 39-23.5(a). Additionally, the Trustee may recover a transfer made by a debtor if the transfer was made to an insider, for an antecedent debt, if the debtor was insolvent at the time, and the insider had reasonable cause to believe that the debtor was insolvent. N.C. Gen. Stat. § 39-23.5(b). Similarly, under Section 548(a)(1)(B), to prove constructive fraud the Trustee must also show the Debtor

6

received less than a reasonably equivalent value in exchange for such transfer or obligation, in addition to other statutory requirements.

Under Section 548(a)(1)(A), a transfer may be avoided that was made within 2 years before the date of the filing of the petition if the debtor made such transfer with actual intent to hinder, delay, or defraud creditors. N.C. Gen. Stat. § 39-23.4 contains a similar analysis which allows for a transfer to be avoided if the debtor made the transfer or incurred the obligation (1) with intent to hinder, delay, or defraud any creditor of the debtor.

A claim for avoidance of an actual fraudulent transfer is subject to the heightened pleading standard under Federal Rule of Civil Procedure 9, and the allegations of intent must be supported by specific allegations—typically in the form of alleged "badges of fraud." *See In re Pennysaver USA*, 587 B.R. 445,459-61 (Bankr. D. Del. 2018). When an actual fraudulent transfer claim is asserted by a bankruptcy trustee, the Rule 9(b) standard can be "somewhat relaxed." *In re Palm Beach Fin. Partners, L.P.,* 488 B.R. 758, 766 (Bankr. S.D. Fla. 2013) (citation omitted). The relaxation is based on the fact that a "a trustee is an outsider to the transaction who must plead fraud from second-hand knowledge." *In re MarketXT Holdings Corp.*, 361 B.R. 369, 395 (Bankr. S.D.N.Y. 2007) (quoting *In re Park South Securities, LLC,* 326 B.R. 505, 517–18 (Bankr. S.D.N.Y. 2005).

> Thus, when a trustee brings a claim for fraud, Rule 9(b)'s particularity requirement is met "'if the person charged with fraud will have a reasonable opportunity to answer the complaint and has adequate information to frame a response ... or if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations.'" *In re Brandon Overseas,* 2010 WL 2812944, at *5 (quoting *In re Arizen Homes,* 2009 WL 393863, at *2).

*In re Palm Beach Fin. Partners, L.P.*, 488 B.R. 758, 767 (Bankr. S.D. Fla. 2013).

Defendant argues that Trustee included no more than a formulaic recitation of elements for both claims. However, a review of the Amended Complaint in whole shows that the Trustee has

7

alleged adequate information regarding the fraudulent transfers for Defendant to answer the claims. Trustee argues he is entitled to a judgment avoiding Defendant's share of profits received from his investment and status as a member of Verifi during and participation in the Verifi Scheme. *See, e.g.,* Am. Compl. ¶ 100, 115, 124.

As discussed above, the Amended Complaint and its exhibits allege in detail and with sufficient particularity the existence, illegality, and fraudulent nature of the Verifi Scheme; the investment and participation of Defendant therein; and that he received benefits including transfer of fund by Verifi or its controlling parties. By entering into the agreement with Verifi, submitting lab testing to WCH, and receiving payment, Defendant has dragged himself into an allegedly fraudulent insurance billing plan. Consequently, at this early stage of litigation, Plaintiff, in the unique position of Trustee, has shown enough to survive Defendant's 12(b)(6) motion as to fraudulent transfers.

## CONCLUSION

For the foregoing reasons, Defendant's Motion is GRANTED IN PART and DENIED IN PART. The claim for Count II (Civil Conspiracy) is dismissed. The Motion is denied as to all other claims set forth in the Amended Complaint. Because the claims for Count I (Facilitating Fraud), Count III (Constructive Fraudulent Transfer) and Count IV (Actual Fraudulent Transfer) and facts couched within civil conspiracy potentially survive as part of those claims, responses to paragraphs 107 to 113 are still required. Defendant is directed to file an Answer to the Amended Complaint within thirty (30) days of the filing of this Order.

**END OF DOCUMENT**